**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Plaintiff and Judgment Creditor,
MEDIA LAB, INC.



FILED
OCT 14 2008
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

6:08-21023 PC

| IN RE: | Case No. _____ |
|---|---|
| JOHN ROBERT SHOFFNER, | **COMPLAINT FOR NON-DISCHARGABILITY OF DEBT** |
| Debtor. | |
| | FILED BY FAX |
| | CRC 2005 |
| **MEDIA LAB, INC.** a California corporation, | |
| Plaintiff and judgment creditor, | |
| vs. | |
| **JOHN ROBERT SHOFFNER**, an individual, | |
| Defendant and judgment-debtor. | |

**COMPLAINT**

## INTRODUCTION

1. On March 16, 2005 plaintiff and judgment creditor Media Lab, Inc. ("Media Lab") filed a cross-complaint against defendant and judgment debtor John Robert Shoffner ("Shoffner") for fraud, conversion, cybersquatting, computer fraud, violations of the federal Lanham Act, and violations of California Business & Professions Code section 175200, in the California Superior Court for Los Angeles County, Case No. GC034866 (the "State Action").

2. On November 1, 2006, the California Superior Court for Los Angeles County entered judgment against Shoffner and in favor of Media Lab in the State Action, awarding Media Lab $222,995.38 in damages, costs, and fees (the "Judgment").

3. To date, Media Lab has been unable to collect a penny of the Judgment, but has undertaken efforts to locate and levy upon Shoffner's assets.

4. Prior to any successful levy, on August 22, 2008, Shoffner filed a petition for bankruptcy with this Court, and has sought to discharge the Judgment debt.

5. However, because the Judgment is based on Shoffner's fraud, false pretenses, false representation, the Judgment is not dischargeable under 11 U.S.C. §523(a)(2)(A).

6. Through this Complaint, Media Lab requests that the Court declare the Judgment a non-dischargeable debt of Shoffner.

## RELATED BANKRUPTCY PROCEEDING

7. This adversary proceeding is related to the bankruptcy proceeding *In re John Robert Shoffner*, Case No. 6:08-bk-21023-PC, pending before the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Action"). The Bankruptcy Action was filed under Chapter 7 of the Bankruptcy Code.

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

## CORE V. NON-CORE PROCEEDING

8.  This adversary proceeding constitutes a core proceeding because it involves a cause of action created and determined by the Bankruptcy Code, and specifically, 11 U.S.C. §523(a).

## FACTUAL ALLEGATIONS

9.  Media Lab sells discounted theme park tickets through various Internet websites, including those resolving to the domains: <welcomemagazine.com> and <ticketfun.com>. In addition to the revenue it generates from ticket sales, Media Lab derives revenue from advertisements purchased by ticket vendors on Media Lab's various Internet websites.

10.  In October 2000, Media Lab hired Shoffner *dba* WebPros *dba* CityWare, as a website designer and manager on an independent contractor basis. As part of his duties, Media Lab asked Shoffner to register various domain names for Media Lab's use, to develop websites resolving to those domain names based on Media Lab's creative instructions, and to maintain those websites for Media Lab's customers and advertisers.

11.  Since the time of his hire as an independent contractor, Media Lab routinely and timely paid Shoffner for his services, and reported those payments to the United States Internal Revenue Service. Media Lab also reimbursed Shoffner for his out-of-pocket business expenses, and specifically, for the registration fees for the domain names that Shoffner registered at Media Lab's instruction and on Media Lab's behalf.

12.  Media Lab never granted Shoffner any ownership interest in Media Lab or any of its domain name or website properties.

13.  In his position as Media Lab's webmaster, Shoffner gained extensive knowledge of Media Lab's business structure, including knowledge of Media Lab's online ticket sale processes and Media Lab's discounted pricing agreements with various theme parks and event centers.

14. In 2001, Shoffner requested and Media Lab granted Shoffner with access to Media Lab's website and domain administration account with Network solutions, Inc. Shoffner represented that such access was necessary in order for him to host and maintain Media Lab's websites. Media Lab relied on Shoffner's representations in granting him this access.

15. Thereafter, unbeknownst to Media Lab, and without Media Lab's authorization or consent, Shoffner used his administrative access to Media Lab's domain name account to change the account's administrative contact information from that of Media Lab to Shoffner's own personal information. As a result, all notifications regarding Media Lab's domain activity were sent to Shoffner only.

16. Also unbeknownst to Media Lab, and without Media Lab's authorization or consent, Shoffner changed the DNS server for Media Lab's Internet websites to Shoffner's own personal server. As a result, viewers of Media Lab's websites were routed through Shoffner's computers and not those leased by Media Lab.

17. Thereafter, unbeknownst to Media Lab, and without Media Lab's authorization or consent, Shoffner used his administrative access to Media Lab's website management account to transfer Media Lab's domain <welcomemagazine.com> to Shoffner's to an account different Internet registrar, in Shoffner's own name. However, Shoffner continued to direct this domain name to Media Lab's Internet website, obscuring Shoffner's misconduct.

18. Moreover, during this time period, Media Lab instructed Shoffner to register two additional domain names for Media Lab's use: <californiaamusementparks.com> and <parktickets.us>. However, unbeknownst to Media Lab, Shoffner registered these domain names with himself and not Media Lab as the owner and registrant. Again, Shoffner initially directed these domain names to Media Lab's Internet websites, obscuring Shoffner's misconduct.

19. In or around early 2005, Shoffner learned that Media Lab intended to replace Shoffner with a new web designer. Upon learning this, and unbeknownst to Media Lab, Shoffner used his administrative access to Media Lab's website management accounts to cease directing several of Media Lab's domain names to Media Lab's websites. Shoffner created competitive Internet websites, using content that was confusingly similar to Media Lab's websites. Shoffner then directed traffic to Media Lab's domain names, which Shoffner had stolen, and which displayed Shoffner's websites.

20. Shoffner then made multiple financial demands on Media Lab, holding Media Lab's names for ransom. Shoffner's demanded "a significant amount of money."

21. When Media Lab refused to pay Shoffner and demanded the return of its domain names, Shoffner contacted Media Lab's discount ticket vendors, with whom Media Lab had longstanding contractual relationships. Shoffner informed these vendors that Shoffner was Media Lab's successor in interest, and all obligations and benefits from the vendors' relationships with Media Lab should flow to Shoffner.

22. As a result of Shoffner's conduct, Media Lab was substantially harmed, and on March 16, 2005, brought a cross-claim against Shoffner to recover for the fraud and theft perpetrated by Shoffner.

23. On November 1, 2006, the California Superior Court for Los Angeles County entered the Judgment against Shoffner and in favor of Media Lab for $222,995.38.

24. Shoffner has refused to pay a cent of the Judgment.

25. Under the Media Lab's most recently renewed writ of execution on the Judgment, Media Lab has accrued an additional $38,486.70 in interest on the Judgment.

26. To date, Media Lab has been unable to collect a penny of the

1 | Judgment, despite its efforts to locate and levy upon Shoffner's assets.

2 | 27. On August 22, 2008, before Media Lab had the opportunity to
3 | successfully levy on Shoffner's property, Shoffner filed for a petition for
4 | bankruptcy with this Court, and has sought to discharge the Judgment as a debt.

## FIRST CAUSE OF ACTION

### Non-Dischargability of Debt Under 11 U.S.C. §523(a)(2)(A)

28. Media Lab repeats, re-alleges, and incorporates each and every allegation set forth in paragraphs 1 through 27 of this Complaint.

29. The Judgment resulted from Shoffner's false pretenses, false representations, and actual fraud toward Media Lab.

30. Shoffner has filed for bankruptcy with this Court under Chapter 7 of the United States Bankruptcy Code.

31. Shoffner seeks to discharge the Judgment as a dischargeable debt under the 11 U.S.C. §727.

32. The Judgment should not be discharged as a debt because it is for money obtained as a result of Shoffner's false pretenses, false representations, and actual fraud under 11 U.S.C. §523(a)(2)(A).

## PRAYER

WHEREFORE, Media Lab respectfully requests judgment as follows:

1. That the Court enter a judgment against Defendant that the Judgment, entered by the California Superior Court for Los Angeles County in favor of Media Lab and against Shoffner, is a non-dischargeable debt under 11 U.S.C. §523(a).

2. That the Court order Defendant to pay:

    a. Media Lab's costs and attorneys' fees incurred by Plaintiff in prosecuting this action;

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1     b. Interest, including prejudgment interest, on the foregoing sums;

2 3. That the Court grant to Media Lab such additional relief as is just and
3    proper.

6 DATED: October 14, 2008      KRONENBERGER BURGOYNE, LLP

By: *[signature]*

Jeffrey M. Rosenfeld
Attorneys for Plaintiff

FORM B104 (08/07)                                                                         2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>MEDIA LAB, INC. a California corporation | DEFENDANTS<br>JOHN ROBERT SHOFFNER, an individual |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Kronenberger Burgoyne, LLP<br>150 Post Street, Suite 520<br>San Francisco, CA 94108 | ATTORNEYS (If Known)<br>Yoon O Ham<br>222 N Mountain Ave., Suite 204<br>Upland, CA 91786 |
| PARTY (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor     ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Non-Dischargability of Debt Under 11 U.S.C. §523(a)(2)(A)

FILED BY FAX
CRC 2005

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[1] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

FORM B104 (08/07), page 2                                                   2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| **NAME OF DEBTOR** <br> JOHN ROBERT SHOFFNER ||| **BANKRUPTCY CASE NO.** <br> 6:08-bk-21023 |
| **DISTRICT IN WHICH CASE IS PENDING** <br> Central District of California || **DIVISIONAL OFFICE** <br> Riverside | **NAME OF JUDGE** <br> Peter Carroll |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| **PLAINTIFF** | **DEFENDANT** || **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** || **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** <br> *[signature]* ||||
| **DATE** <br> 10/14/08 ||| **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br> Jeffrey M. Rosenfeld |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.