**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiff and Judgment Creditor,
MEDIA LAB, INC.

FILED
MAY 27 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>JOHN ROBERT SHOFFNER,<br><br>Debtor. | Chapter 7<br><br>Case No. 6:08-bk-21023-PC<br><br>Adversary No. 6:08-ap-01406-PC<br><br>**DECLARATION OF JASON BERRY IN SUPPORT OF MEDIA LAB, INC.'S CASE IN CHIEF**<br><br>Trial Date: May 27, 2010<br>Trial Time: 9:00 a.m.<br>Courtroom: 304 |
| MEDIA LAB, INC. a California corporation,<br><br>    Plaintiff and judgment creditor,<br><br>vs.<br><br>JOHN ROBERT SHOFFNER, an individual,<br><br>    Defendant and judgment-debtor. | |

Adversary No. 6:08-ap-01406-PC

DECL. OF J. BERRY IN SUPPORT OF
MEDIA LAB'S CASE IN CHIEF

I, Jason Berry, declare as follows:

1. I am not a party to this litigation and I have personal knowledge of the matters stated in this Declaration.

2. I am a website administrator and designer. I have extensive experience in the creation and deployment of websites, including extensive experience in search engine optimization.

3. On or around January 2005 I began working with Media Lab, Inc. ("Media Lab"), and in particular with Jim Kirkwood at Media Lab.

4. I was engaged by Media Lab to design and optimize Media Lab's websites, and to replace Media Lab's former website designer and administrator John Shoffner, the Defendant and Judgment Debtor.

5. Media Lab sells discounted theme park tickets through its various websites.

6. At the time I began working with Media Lab in January 2005, Media Lab was hurriedly trying to associate its websites with new domain names, and then to optimize those websites to achieve high rankings within the different Internet search engines.

7. Media Lab was using these new domain names because Media Lab could not access its original domain names, including <welcomemagazine.com> and <ticketfun.com> (the "Original Domains").

8. I discovered that Media Lab's Original Domains were being controlled by Mr. Shoffner. Mr. Shoffner was not allowing Media Lab access to the Original Domains. Nor was Mr. Shoffner allowing Media Lab access to the websites associated with the Original Domains. Thus, Media Lab had lost all control over its Original Domains and the websites associated with the Original Domains.

9. I was able to determine that Mr. Shoffner was the person controlling the Original Domains by examining the WHOIS information for the Original Domains.

10. WHOIS refers to an Internet function that allows a user to query remote

1  databases for domain name registration information. A WHOIS query reveals the
2  registrant of the domain name and the domain servers associated with that domain
3  name. A domain name's WHOIS information can be updated at any time by the person
4  who possesses the username and password to the domain name registrar account.

5  11.  Prior to January 2005, the WHOIS information for
6  <welcomemagazine.com> showed that the registrant was Welcome Magazine at 419
7  Avenida Arlena, San Clemente, CA. Exhibit 1 is a copy of the historical information for
8  <welcomemagazine.com> from March 2004, which was printed out from the website
9  domaintools.com on April 2, 2010. Domain Tools is a reputable source for WHOIS
10 information and Exhibit 1 is a true and accurate copy of the historical WHOIS
11 information for <welcomemagazine.com>.

12 12.  As of January 2004, the WHOIS information for <welcomemagazine.com>
13 had been changed to name the registrant as: WebPros at 32 Diamond St., Arcadia CA
14 91006. Exhibit 2 is a copy of the historical information for <welcomemagazine.com>
15 from January 2005, which was printed out from the website domaintools.com on April 2,
16 2010. Domain Tools is a reputable source for WHOIS information and Exhibit 2 is a
17 true and accurate copy of the historical WHOIS information for
18 <welcomemagazine.com>.

19 13.  As a website administrator, I have often contacted former administrators to
20 get the username and password for the domain registrar accounts and web hosting
21 accounts of the client. After obtaining this information, as the new website administrator
22 I can control the client's domain names and websites, make changes to the websites,
23 and/or transfer the domain names or websites to different accounts. In almost all such
24 cases, the former administrators have been forthcoming in providing me with this
25 information.

26 14.  Thus, on multiple occasions, I attempted to contact Mr. Shoffner to
27 request that he provide me with the username and password for the registrar accounts
28 for the Original Domains. Mr. Shoffner refused to respond to my inquiries and refused

KRONENBERG BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Adversary No. 6:08-ap-01406-PC       2       DECL. OF J. BERRY IN SUPPORT OF
                                              MEDIA LAB'S CASE IN CHIEF

1 | to return the Original Domains to Media Lab.

2 |     15. I observed how Mr. Shoffner's actions caused Jim Kirkwood extreme stress and disappointment. I also observed how Mr. Shoffner's actions caused Media Lab to expend significant resources in developing new websites and optimizing these websites.

    16. Because Media Lab had spent significant time optimizing the websites associated with the Original Domains, these websites had ultimately achieved high search engine rankings. Specifically, when a user searched on a keywords such as "California," "vacation," and "amusement park," these websites would appear high in the search engine rankings. These high search engine rankings translated into increased Internet traffic and thus increased business for Media Lab.

    17. In comparison, Media Lab's websites associated with the new domain names were achieving relatively poor search engine rankings as of January 2005. These poor rankings were due primarily to the domain names' newness. Specifically, when a user searched on a keywords such as "California," "vacation," and "amusement park," these websites would appear low in the search engine's rankings. These low search engine rankings translated into decreased Internet traffic and thus decreased business for Media Lab.

    18. Thus, because Mr. Shoffner refused to return the Original Domains to Media Lab, Media Lab experienced a significant drop in Internet traffic and business. In other words, Media Lab lost all of the traffic that resulted from its highly-optimized websites associated with the Original Domains.

    19. Media Lab was forced to expend considerable time and money optimizing its websites associated with the new domain names, in order to increase the search engine rankings.

    20. Website optimization and search engine rankings have an enormous effect on the success of a commercial website, as it is the primary determinant of website traffic.

KRONENBERG   JRGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

21. Had Media Lab not been deprived of the Original Domains, they would not have been forced to incur the expense and loss of business in optimizing new websites.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed this 20th day of April 2010 at Los Angeles, California.

_____
Jason Berry

Adversary No. 6:08-ap-01406-PC    4    DECL. OF J. BERRY IN SUPPORT OF MEDIA LAB'S CASE IN CHIEF